BENJAMIN B. WAGNER
United States Attorney
ELANA S. LANDAU
Assistant U.S. Attorney
4401 Federal Building
2500 Tulare Street
Fresno, California 93721
Telephone: (559) 497-4000

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:10-CR-178 AWI |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(c)(1)(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |
| v. | ) | |
| DANIEL DIAZ, | ) | Date:    TBD<br>Time:    10:00a.m.<br>Department Two<br>Honorable Anthony W. Ishii |
| Defendant. | ) | |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States

of America, by and through BENJAMIN B. WAGNER, the United States Attorney for the

Eastern District of California, and ELANA S. LANDAU, Assistant United States Attorney, and the

defendant, DANIEL DIAZ, and his attorney, MARK W. COLEMAN, have agreed as follows[1]:

    1.    <u>Charges.</u>

The defendant acknowledges that he has been charged by Indictment, in the Eastern District

of California, No. 1:10-CR-178 AWI, with one count of Conspiracy to Kidnap a Federal Officer or

Employee, in violation of Title 18, United States Code, Sections 1201(a)(5) and (c), one count of

Aggravated Robbery of Mail, Money and Other Property of the United States and Aiding and

---

[1] The defendant acknowledges that this plea agreement is limited to the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

Abetting, in violation of Title 18, United States Code, Sections 2114(a) and 2, and one count of

tampering with a witness, victim or informant, in violation of Title 18, United States Code, Section

1512(a)(2)(C).  The defendant will plead guilty to Count Two of the Indictment, Aggravated

Robbery of Mail, Money and Other Property of the United States and Aiding and Abetting, in

violation of Title 18, United States Code, Sections 2114(a) and (2).

      2.    <u>Nature, Elements and Possible Defenses</u>.

     The defendant has read the charges against him contained in the indictment, and those

charges have been fully explained to him by his attorney.  Further, the defendant fully understands

the nature and elements of the crime charged in Count Two of the indictment to which he is pleading

guilty, together with the possible defenses thereto, and he has discussed them with his attorney.

     The elements of the crime of Aggravated Robbery of Mail, Money and Other Property of the

United States and Aiding and Abetting, as alleged in Count Two of the indictment, are as follows:

     (1)    The defendant took mail matter, money or other property of the United States

     (2)    The defendant took the mail matter, money or other property from the person or presence of another having lawful charge, control or custody over it;

     (3)    The defendant did so by use of force and violence or intimidation;

     (4)    The defendant put the victim's life in jeopardy by use of a dangerous weapon.

The elements of aiding and abetting are:

     (1)    The crime, in this case aggravated robbery of mail, money and other property of the United States, was committed by someone;

     (2)    Second, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of the crime; and

     (3)    Third, the defendant acted before the crime was completed and acted with the knowledge and intention of  helping that person commit aggravated robbery of mail, money and other property of the United States.

///

///

2

3.      Agreements by the Defendant.

(a)  The defendant agrees that this plea agreement shall be filed with the court and become a part of the record in the case.

(b)  Defendant agrees to enter a plea of guilty to Count Two of the indictment, charging him with aggravated robbery of mail matter, money or other property of the United States and aiding and abetting, in violation of Title 18, United States Code, Sections 2114(a) and 2.

(c)  The defendant acknowledges, that although the government has indicated a sentencing range which may result from the agreements contained herein, the government makes no representations as to the defendant's criminal history category or the guideline calculation which may result by the Probation Office.  Should other factors result in a recommended sentence which is higher than contemplated or forecasted by the parties, such a sentence is not in violation of this agreement and the government is only bound to recommend the specific reductions listed herein.  By the terms of this agreement, the defendant has no entitlement to any particular sentence.

(d)  The defendant understands and agrees that the Court is not a party to this agreement, that sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.  If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

(e)  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging this, the defendant knowingly waives the right to appeal his conviction or any sentence (or the manner in which that sentence was determined) which is within the statutory maximum for the crime on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.  The defendant also waives his right to challenge

3

his conviction, sentence or the manner in which it was determined in any post-conviction attack, including but not limited to a motion brought under Title 28, United States Code, Sections 2241 or 2255.

(f)   The defendant agrees to waive all rights under the "Hyde Amendment", Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this Agreement and any charges previously dismissed).

4.   <u>Agreements by the Government</u>.

(a)   The government will recommend that the defendant receive a three-level reduction in the computation of his offense level due to his acceptance of responsibility, provided that the defendant qualifies for such a reduction in his interview with the probation officer.

(b)   The government agrees to recommend that the defendant be sentenced to imprisonment at no greater than the high end of the applicable guideline range.

5.   <u>Sentencing Guideline Calculations</u>.

Although the parties understand that the sentencing guidelines are only advisory and only one of the factors the court will consider under 18 U.S.C. §3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures:

|   |   |   |
|---|---|---|
| 1. | Base Offense Level [USSG § 2B3.1(a) | 20 |
| 2. | Property of a Post Office Taken [USSG USSG § 2B3.1(b)(1)] | +2 |
| 3. | Dangerous Weapon Used [USSG § 2B3.1(b)(2)(D)] | +4 |
| 4. | Person Abducted to facilitate offense [USSG § 2B3.1(b)(7)] | +4 |
| 5. | Amount of Loss [USSG § 2B3.1(b)(7)] | +1 |
| 6. | Acceptance of Responsibility | -3 |
|   | **TOTAL OFFENSE LEVEL** | **28** |

The parties reserve the right to argue the applicability of any other sentencing guideline not

1    mentioned above.

2        6.      <u>Factual Basis</u>.

3        The defendant will plead guilty because he is in fact guilty of the crime set forth in Count

4 Two of the Indictment. The defendant also agrees that the following are the facts of this case,

5 although he acknowledges that, as to other facts, the parties may disagree:

6        On October 16, 2009, in the County of Kern, within the State and Eastern District of
California, the defendant did rob Joseph Anderson, a person laving lawful charge, control and
7 custody of United States mail matter and money and other property of the United States, and in
doing so did put the life of Joseph Anderson in jeopardy by use of a dangerous weapon, in violation
8 of Title 18, United States Code, Sections 2114 and 2.

9        Specifically, on October 16, 2009, at approximately 5:20 p.m., Joseph Anderson, a U.S.
Postal Service contract driver was performing his duties in the area of Taft, California, when he was
10 kidnapped at gunpoint and taken to a remote location and robbed. On that date, Mr. Anderson was
stopped at a stop sign when the defendant, an individual unknown to him, entered into the cab of the
11 his truck, pointed what appeared to be a gun at him and forced him to drive to a nearby abandoned
hospital. Once they arrived at the location, the defendant got out of the victim's truck and turned the
12 side view mirrors so that Mr. Anderson could not see what was occurring behind him. The
defendant then got back into the truck and took Mr. Anderson's cellphone, wallet and keys. The
13 defendant then ordered the victim to tie himself up with zip ties and a string from the defendant's
hooded sweatshirt. The defendant then stated, "Now you cooperate with me, if you don't I will have
14 to kill you."

15        The defendant then used Mr. Anderson's keys to open rear compartment of the truck and
stole approximately seven mail bags containing U.S. mail and bank deposits, including cash. The
16 defendant then returned and told Mr. Anderson to "wait right here, I'm waiting for someone." The
defendant then returned the victim's wallet after removing the driver's license and cellphone, without
17 the battery or sim card. Approximately thirty minutes later, the victim heard a vehicle arrive to the
location to pick up his assailant, but was unable to see the vehicle or any occupants because the
18 defendant had turned the side mirrors on the truck in an apparent attempt to avoid such an
identification. Before leaving, the defendant told the victim, "Now you go back to the plant and tell
19 them what happened," indicating that he was familiar with Postal terms. Once he was satisfied that
his attacker had left, Mr. Anderson was able to free himself and go for help.
20

21        It was determined that the items stolen from the US Postal service truck during the robbery
were the seven "register bags" which contained the USPS deposits consisting of cash and checks.
22 The other containers in the truck, which contained other miscellaneous items and mail, were left
behind, indicating someone with knowledge of which bags inside the truck contained the cash and
checks was involved. A total of $12,711 U.S. currency and $1,149.34 in checks were taken during
23 the robbery.

24        Based on the belief that the robbery was an "inside job", investigators focused on individuals
with knowledge of the Taft route. Investigators obtained a list of five drivers for the Taft route,
25 including the victim. After speaking with the owner of Taft route, investigators learned that one of
the individuals on the list, co-defendant Raul Ojeda, had been fired because he had a conviction for
26 driving under the influence. Several witnesses admitted to being present during conversations
wherein co-defendant Ojeda planned the robbery. Witnesses confirmed that co-defendant Ojeda
27 used his knowledge of the route and of his former coworker, Mr. Anderson, the victim, to plan the
robbery that was ultimately executed on October 16, 2009.
28

///

7.    <u>Potential Sentence</u>.

The defendant understands that since the offense to which he is pleading guilty occurred after November 1, 1987, the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 2005 WL 50108 (Jan. 12, 2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. Defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

The following is the maximum potential sentence which the defendant faces:

(a)    Imprisonment.

       Maximum:    Twenty-five (25) years.

(b)    Fine.

       Maximum:    Two Hundred Fifty Thousand Dollars ($250,000).

(c)    Both such fine and imprisonment.

(d)    Term of Supervised Release.

       Maximum:    Five (5) years

       (Should the defendant violate any of the terms of his supervised release, he can be returned to prison for the remaining period of supervised release actually imposed by the court, or five years whichever is less.)

(e)    Penalty Assessment:

       Mandatory: One Hundred Dollars ($100).

///

///

8.    Waiver of Rights.

The defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a)    The defendant is entitled to the continued representation of an attorney at any trial in this case and, if the defendant is unable to afford such an attorney, one would be appointed by the court.

(b)    If the defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial and the assistance of an attorney at that trial. If the defendant could not afford an attorney, one would be appointed for him.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(c)    If the trial were a jury trial, the jury would be composed of twelve lay persons selected at random.  The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

(d)    If the trial were held before a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he was persuaded of the defendant's guilt beyond a reasonable doubt.

(e)    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against the defendant.  The defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.  In turn, the defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the

7

1  defendant would not appear voluntarily, he could require their attendance through the subpoena

2  power of the court.

3          (f)     At a trial, the defendant would have a privilege against self-incrimination so that he

4  could decline to testify, and no inference of guilt could be drawn from this refusal to testify.

5          (g)     After conviction, the defendant would have the right to appeal his conviction and

6  sentence.

7          The defendant understands that by pleading guilty he is waiving all of the rights set forth

8  above and the defendant's attorney has explained those rights to him and the consequences of his

9  waiver of those rights.

10          9.      Questions by Court.

11          The defendant understands that if the court questions him under oath, on the record and in

12  the presence of counsel, about the offenses to which he has pleaded guilty, his answers, if

13  false, may later be used against him in a prosecution for perjury or false statement.

14          10.     Entire Agreement.

15          The defendant and his attorney acknowledge that no threats, promises or representations

16  have been made, nor agreement reached, other than those set forth in this Agreement, to induce

17  defendant to plead guilty.

18          11.     Court not a Party.

19          It is understood by the parties that the sentencing Court is neither a party to nor bound by this

20  agreement and the sentencing judge is free to impose the maximum penalties as set forth in

21  paragraph 6 above.  Also, should the court fail to follow any or all of the government's sentencing

22  recommendations, the defendant will not be allowed to withdraw his plea.

23          12.     Presentence Report.

24          The defendant understands that the United States Probation Office is not a party to this

25  agreement and will conduct an independent investigation of the defendant's activities and his

26  background and prepare a presentence report which it will submit to the court as its  own sentencing

27  recommendation.  In addition, the government will fully apprise the Probation Office, as well as the

28  court, of the full and true nature, scope and extent of the defendant's criminal activities concerning

1   ///

2   ///

3   the charge to which the defendant is entering a plea of guilty, including activities which may not

4   have been charged in the Indictment.

5

6                                                           BENJAMIN B. WAGNER
                                                            United States Attorney
7                                                           Eastern District of California

8   DATED: ~~October~~ November 13 _____, 2012      By: _____
9                                                          ELANA S. LANDAU
                                                           Assistant U.S. Attorney
10

11  DATED: ~~October~~ Nov 12 _____, 2012              _____
12                                                         DANIEL DIAZ
                                                           Defendant
13

14  DATED: ~~October~~ Nov 12 _____, 2012              _____
15                                                         MARK W. COLEMAN
                                                           Attorney for Defendant
16

17

18

19

20

21

22

23

24

25

26

27

28

9